J. T. FARGASON & SON *et al. v.* SEVIER LAKE DRAINAGE DISTRICT.

[64 South. 467.]

DRAINS. *Drainage. Establishment. Code* 1906, *chapter* 39.

Code 1906, chapter 39 provides that this chapter shall be literally construed to promote drainage and so where a petition for the establishment of a drainage district was referred to commissioners, and they were directed to go upon the lands and examine them, but did not actually go over the entire district, nor examine defendant's lands, but engaged competent engineers to do so, and procured maps of the geological survey from the Federal Government. Since the statute merely makes the commissioners the agent of the chancery court to investigate and report their findings, which the court is not bound to accept, a decree including defendant's land in the drainage district will not be reversed, because the commissioners did not actually go upon the defendant's land.

Appeal from the chancery court of Coahoma county. HON. M. E. DENTON, Chancellor.

Proceeding by the Sevier Lake Drainage District against J. T. Fargason & Son and others. From a decree for complainant defendant appeals.

The facts are fully stated in the opinion of the court.

*Scott & Yerger* and *Tim E. Cooper,* attorneys for appellant.

*Chas. W. Clark,* attorney for appellee.

Argued orally by *D. A. Scott,* for appellant and *Chas. W. Clark,* for appellee.

COOK, J., delivered the opinion of the court.

This is an appeal from the decree of the chancery court of Coahoma county deciding that the lands of appellants should form a part of the Sevier Lake Drainage District. It is the contention of appellants that their lands will not be benefited by the proposed system of drainage. This was a question of fact which was submitted to the chancellor upon conflicting testimony, and was by him solved against appellants, and we cannot say that he was manifestly wrong. After deciding that the lands described in the petition formed a combined system of drainage, the petition was referred to the commissioners, and they were directed to "go upon said lands and examine the same, and the lands over which the work is proposed to be constructed, and determine, first, the starting point, route, and termini of the proposed work, and the location and size of the main ditch to be constructed in said drainage district, which, in their opinion, will successfully drain the said lands, and whether the drainage of the lands in such proposed district is possible, or not," etc. Upon the hearing of the report of the commissioners it was contended that the commissioners had never gone on the land to examine same, but had delegated this duty to an engineer.

It appears that the commissioners did not go over the entire district; that they had never gone on all of the

lands of the proposed district, but that they had a general knowledge of same. What the commissioners did do was to employ the services of a capable civil engineer to make an accurate survey of the proposed district. It seems that the area embraced in the district had been previously surveyed by the engineers of the United States Geological Survey, and that a detailed map thereof had been prepared by this department showing all the sloughs, bayous, drains, depressions, and levels of the land. It is shown also that the engineer employed by the commission had, before that time, supervised a survey of this district for drainage purposes.

A map of the engineer's survey showing in the minutest detail the levels and elevations of the entire district was submitted and explained to the chancellor by the engineer. The objectors also secured the aid of a competent engineer to put their side of the case to the chancellor, and the testimony of laymen on every phase of the controversy was offered by the commissioners and the objectors.

It will be noted that our drainage laws do not commit the determination of these questions to the final decision of the commissioners. In fact the statutes merely make the commissioners the agents of the chancery court to investigate and report their findings to the court. The court may adopt the report in its entirety, or may reject it, or the court may accept the report in part and reject it in part. The statutes make the chancery court the final arbiter, and all parties in interest are given an opportunity to appear and make known their objections. The decrees and orders of the chancery court are subject to review by this court.

The report of the commissioners forms a basis for the organization of the district, but the report is not binding upon anybody. When the report comes in, notice is given to all parties interested, and after hearing the suggestions and objections of all, the court renders its decree.

We are admonished by the legislature that chapter 39, Code of 1906, "shall be liberally construed" to promote drainage, and this construction, it seems to us, is entirely in harmony with the legislative purpose, and does no voilence to the language of the several sections of chapter 39.

There is no question here involving the assessment of benefits and damages; the objections here go to the order putting appellant's lands in the proposed district, and to the decree confirming the report of the commissioners upon the location of the ditches and drains.

*Affirmed.*